UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

Case No. 21-CR-26-JPS

JOSE CRESPO-LORENZO,
    a/k/a "El Colombiano,"

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Richard G. Frohling, United States Attorney for the Eastern District of Wisconsin, and Robert J. Brady, Jr. and Gail J. Hoffman, Assistant United States Attorneys, and the defendant, Jose Crespo-Lorenzo (a/k/a "El Colombiano"), individually and by attorney Michael G. Levine, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in Count One of the indictment, which alleges he, and others known and unknown, conspired to possess with intent to distribute 5 kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(b), 70506(a), and 21 U.S.C. § 960(b)(1)(B); and Count Two, which alleges he, and others known and unknown, conspired to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been

charged, and that charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

1. Beginning in or about October 2019, and continuing through the date of this indictment, upon the high seas and elsewhere outside the jurisdiction of any particular State and district,

**JOSE CRESPO-LORENZO,**
a/k/a "El Colombiano,"

knowingly and intentionally conspired with other persons known and unknown to the grand jury to possess with intent to distribute a controlled substance while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Section 70503(a)(1).

2. The amount of controlled substance involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, includes five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

All in violation of Title 46, United States Code, Section 70506(b); Title 46, United States Code, Section 70506(a); and Title 21, United States Code, Section 960(b)(1)(B).

2

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

Beginning in or about October 2019, and continuing through the date of this indictment, upon the high seas and elsewhere outside the jurisdiction of any particular State and district, Jose CRESPO-LORENZO (a/k/a "El Colombiano"), conspired with others, known and unknown, to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine while on board a vessel subject to the jurisdiction of the United States. Co-conspirator David QUINONES-QUINONES was responsible for supplying kilogram-quantities of cocaine to individuals in Puerto Rico. Those individuals were, in turn, responsible for sending the cocaine to various locations within the continental U.S., including Milwaukee, Wisconsin. QUINONES-QUINONES was also responsible for facilitating the receipt of maritime shipments of cocaine to Puerto Rico from the Dominican Republic. On January 15, 2020, QUINONES-QUINONES was arrested in Puerto Rico. During a search of QUINONES-QUINONES's residence, investigators recovered more than 5 kilograms of cocaine, money, and a firearm.

Among the individuals with whom QUINONES-QUINONES coordinated, or attempted to coordinate, maritime cocaine shipments was Jose CRESPO-LORENZO, who QUINONES-QUINONES knew by the nickname "El Colombiano." WhatsApp communications (i.e., both voice and text messages) between QUINONES-QUINONES and CRESPO-LORENZO occurring from early October 2019 through December 2019 disclosed that they were coordinating a multi-kilogram cocaine shipment from the Dominican Republic to Puerto Rico. According to the WhatsApp communications, CRESPO-LORENZO and his Dominican-based associates planned to release a cocaine-laden vessel near Miches, Dominican Republic. The vessel would meet a maritime crew sent by QUINONES-QUINONES at agreed coordinates (i.e., 18°18'57.1"N, 67°33'50.5"W), which corresponded to a location ≈ 7 miles southwest of the Desecheo National Wildlife Refuge and within the "customs waters" of the United States. At the designated meet location, CRESPO-LORENZO's crew would conduct an at-sea transfer of the cocaine with QUINONES-QUINONES's crew. To ensure a smooth and secure transfer, CRESPO-LORENZO and QUINONES-QUINONES agreed that their respective crews would exchange a password, which was initially "Rincon," but later changed to "Pito."

The WhatsApp communications disclosed that CRESPO-LORENZO was in the Dominican Republic at the time he was coordinating the cocaine shipment with QUINONES-QUINONES. For instance, several screenshots of CRESPO-LORENZO's phone, which he sent via text to QUINONES-QUINONES, disclosed that his cellphone service-provider was "CLARO DOM," a Dominican service provider. CRESPO-LORENZO also indicated a primary election was occurring at his location on October 6, 2019. The Dominican Republic had primary elections on October 6, 2019. Travel records (linked to CRESPO-LORENZO's U.S. passport number)

3

additionally indicated CRESPO-LORENZO was in the Dominican Republic between October 2, 2019 and December 4, 2019.

The WhatsApp communications disclosed CRESPO-LORENZO and QUINONES-QUINONES had to cancel a few planned maritime cocaine shipments due to heightened law-enforcement activity in the waters between the Dominican Republic and Puerto Rico, which had resulted in successful interdictions. For instance, on October 10, 2019, QUINONES-QUINONES sent CRESPO-LORENZO a link to an article detailing a substantial cocaine seizure by the Puerto Rico Police Department Joint Forces for Rapid Action (FURA). Upon sending the article, QUINONES-QUINONES promptly said, "The project is suspended for 3 days." QUINONES-QUINONES continued, "[T]hey (i.e., law enforcement) are checking everything that comes in at the shore, and we don't want to lose that (i.e., the cocaine load) . . . . We are giving it 3 days to cool off." CRESPO-LORENZO replied, "[W]e are close and can't allow that to happen because we are going to lose a lot of money . . . we are going to leave everything in place and when you tell us, then we will come." On October 19, 2019, CRESPO-LORENZO sent a link to an article detailing another significant maritime cocaine seizure. In reference to the seizure, CRESPO-LORENZO remarked, "This . . . happened yesterday." QUINONES-QUINONES asked, "Can't leave today?" CRESPO-LORENZO replied, "Yes . . . everything is scrambled." QUINONES-QUINONES said, "We are going to overcome all of these obstacles." CRESPO-LORENZO then remarked, "The good thing is that here we have a big warehouse of 'tires' and 'cables' that if one dies, the other comes out because we are full, completely full . . . of 'cables,'" indicating that his organization could handle occasional drug seizures because they had a plentiful supply of cocaine in a large warehouse in the Dominican Republic. The terms "tires" and "cables" were a coded reference to cocaine.

Ultimately, on November 16, 2019, CRESPO-LORENZO and his Dominican-based associates released a cocaine-laden vessel from a location at or near Miches with the expectation that it would meet QUINONES-QUINONES's maritime crew to conduct an at-sea transfer at the designated coordinates near the Desecheo National Wildlife Refuge. On that date, QUINONES-QUINONES informed CRESPO-LORENZO that "everything is ready." CRESPO-LORENZO replied, "Perfect. I'm sending you a video of them leaving so your people can recognize the 'truck,'" indicating he would send QUINONES-QUINONES a video of the crew departing in their cocaine-laden vessel. CRESPO-LORENZO asked, "Everything the same with the codes?" QUINONES-QUINONES replied, "Yes, everything is the same," indicating the GPS coordinates and password remained the same. A few minutes later, CRESPO-LORENZO sent a video of a pair of boats traveling in a channel and headed toward a larger body of water. During the video, CRESPO-LORENZO can be heard saying, "You see my brother, the blue one (referencing the cocaine-laden boat) going there. You see, it's leaving, it's leaving." The vessel was transporting 100 kilograms of cocaine. On November 17, 2019, at about 12:30 a.m., CRESPO-LORENZO texted, "We have a situation." He continued, "Contact your people. Let them know we have a problem. The Coast Guard surrounded us, we had to turn around and had to throw something (i.e., the cocaine) away. Call your people, we have a problem." QUINONES-QUINONES inquired whether his crew should depart. CRESPO-LORENZO replied, "Canceled." In the days following the lost cocaine load, CRESPO-LORENZO indicated he was again organizing another maritime cocaine venture. On December 11, 2019, QUINONES-QUINONES informed CRESPO-LORENZO, "[W]e are here for anything." CRESPO-LORENZO replied, "[T]he soonest we are ready, we'll inform you so we can do it."

4

Based upon the evidence, CRESPO-LORENZO is responsible for at least 50 kilograms, but less than 150 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum terms of imprisonment and fines: life imprisonment and a $10,000,000 fine. The count also carries a mandatory minimum of ten (10) years imprisonment, and a term of supervised release ranging between at least five (5) years and life. The defendant must also pay a mandatory special assessment of $100.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## PROOF OF DRUG WEIGHT FOR STATUTORY
## MINIMUM AND MAXIMUM PENALTIES

8. The parties understand and agree that for the penalties in 21 U.S.C. § 960(b)(1)(B) to apply, as provided in paragraph 6 above, the government must prove beyond a reasonable doubt that the offense to which the defendant is pleading guilty involved at least 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance. The defendant agrees that the government possesses sufficient, admissible evidence to meet this burden.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine while on board a vessel subject

5

to the jurisdiction of the United States as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

## COUNT ONE

<u>First</u>, the conspiracy as charged in the indictment existed; and

<u>Second</u>, the defendant knowingly became a member of the conspiracy.

## **SENTENCING PROVISIONS**

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### **Sentencing Guidelines Calculations**

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any

6

particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

16. The parties acknowledge and understand that the government will recommend to the sentencing court that the relevant conduct attributable to the defendant is the equivalent of at least 50 kilograms but less than 150 kilograms of cocaine.

## Base Offense Level

17. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 34 under Sentencing Guidelines Manual § 2D1.1.

## Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence of 120 months imprisonment.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### DISMISSAL OF REMAINING COUNT

27. As noted in the plea agreement, the defendant agrees to plead guilty to Count One of the indictment (i.e., conspiracy to possess with intent to distribute 5 kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(b), 70506(a), and 21 U.S.C. § 960(b)(1)(B)). The government agrees to move to dismiss the remaining count of the indictment (i.e., Count Two) as to the defendant at the time of sentencing.

9

## FOREBEARNCE OF CHARGES

28.  The government agrees not to pursue charges against JC and KMMG based on the evidence underlying the indictment returned in this case.

## DEFENDANT'S WAIVER OF RIGHTS

29.  In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

- a.  If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

- b.  If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

- c.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

- d.  At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

- e.  At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

10

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally-insured financial institution.

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## **GENERAL MATTERS**

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

36. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

37. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

12

Case 2:21-cr-00026-JPS-SCD    Filed 04/25/22    Page 12 of 13    Document 25

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 4/24/22

JOSE CRESPO-LORENZO
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 4/24/22

MICHAEL G. LEVINE
Attorney for Defendant

For the United States of America:

Date: 4/25/22

RICHARD G. FROHLING
United States Attorney

Date: 4/25/22

ROBERT J. BRADY, JR.
Assistant United States Attorney

Date: 4/25/22

GAIL J. HOFFMAN
Assistant United States Attorney

13